UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CR-80213-RYSKAMP

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.

RICHARD EMERICH,

        Defendant.

_____/

## RICHARD EMERICH'S REQUEST FOR VARIANCE AND SENTENCING MEMORANDUM

Richard Emerich, through undersigned counsel, hereby files this sentencing memorandum and requests for variance and states as follows:

*A difficult life*

Richard Emerich has had a difficult life.  He was sexually molested by an older camper at summer camp when he was 11 years old.  Filled with shame and fear he did not report the sexual abuse. A year later, at the age of 12, he was forced to engage in oral sex and was anally raped by a Boy Scout Leader on two consecutive nights during a camping trip.  Richard's father was an Eagle Scout and once again shame and fear prevented the 12 year old Richard from reporting the abuse.  Growing up as a "shy, lost, pimply-faced, overweight, nail-biting kid" Richard was subjected to near constant bullying.  As a direct result of the sexual abuse and daily, unmerciful bullying, Richard became a depressed, withdraw, and lonely man with little or no friends.  (His only real

friend in life was killed in a car accident when the two of them were high school students.)

*Serving others*

Despite (or perhaps because of) the emotional dysfunction of his life, Richard has dedicated his life to helping and protecting others. After earning a Bachelor of Science degree from Principia College in Illinois, Richard became a full time chemist. He went to work for TestAmerica Laboratories a full service environmental testing facility. Richard worked as an inorganic chemistry expert testing municipal drinking water supplies and sewer treatment plants. His worked as a technician director and lab supervisor was dedicated to one goal - *keeping the public safe*. This desire to help his fellow man carried over into Richard's private life as well.

*Volunteering*

Richard has spent a considerable portion of his life volunteering. For fifteen years, Richard served as a volunteer firefighter. (Note that this wasn't just a for a few weekends- it was for *fifteen years*). Richard dedicated a significant portion of his life working as a certified first responder for no pay and no recognition. Richard pulled mangled bodies from cars. He entered homes engulfed in flames. Putting himself at risk for no reward other than knowing that he was contributing to society. He was doing his part once again to *keeping the public safe*.

After hanging up his firefighter uniform, Richard began volunteering with the First Church of Christ delivering hot meals to elderly shut-ins. For many of his clients,

Richard was the only person in their lives. This type of dedication to public service shows that despite his inner demons, Richard has been an asset to his community. More importantly, it shows that Richard still has something to offer. His life has value. Richard's prayer for the future is that once he is released he will be able to dedicate his life to serving elderly shut-ins.

*Cooperation*

From the moment law enforcement officers knocked on his door on November 2, 2015 Richard has done everything in his power to cooperate with law enforcement. He immediately admitted his full involvement in the case. He assisted law enforcement with the search of his apartment and his computers.  He immediately gave a full and complete confession. Once formal charges were filed in the case Richard immediately agreed to plea guilty.  Richard also volunteered to cooperate with investigators.  He has been through two debriefings and has offered his assistance with identifying potential targets.  Although it is unlikely that Richard's cooperation will lead to an arrest or a 5K1 motion, his willingness to cooperate is illustrative of his willingness to accept responsibility and to make amends for his wrongdoing.

*Extraordinary Acceptance of Responsibility*

In addition to his cooperation, Richard has voluntarily agreed to make significant restitution in this case.  During his very first meeting with undersigned counsel, Richard expressed profound regret for his actions.  He also exhibited a keen amount of insight about his actions.  Richard realized that his history of abuse had a significant impact on

his life and he realized that his actions in this case caused suffering in others.  Richard

asked if there was anything he could do to try to make amends for his actions and the

possibility of restitution was discussed. Soon thereafter, Richard voluntarily offered to

make a restitution payment of Two-Hundred and Thirty Thousand Dollars ($230,000.00)

in this case.  That restitution reflects payments of $50,000 to each of the three

identifiable victims in the case (an amount sufficient to provide for the type of treatment

Richard never received) as well as an additional $80,000 contribution to the Crime

Victims Fund in the United State's Treasury.  It is important to note that the idea of

making restitution came directly from Richard. The offer of restitution was made *prior* to

any request being made by the government and the offer of restitution was made *prior*

to any recommendation of probation.


*Psychosexual Evaluation and Risk Assessment*

At the request of undersigned counsel, Richard was evaluated by Dr. Merry

Haber, Ph.D.  Dr. Haber conducted a Mental Health Examination and Clinical Interview.

Dr. Haber also administered an 18 page Psychosexual History, a Millon Clinical

Multiaxial Inventory-III, the Minnesota Multiphasic Personality Inventory-2-Restructured

Form, the Personality Assessment Inventory and the Static 99R. A full and complete

report prepared by Dr. Haber is attached. Dr. Haber opines that Richard:

- has insight into his crime,

- clearly recognizes the inappropriateness of his behavior,

- is truly remorseful,

- is eager for rehabilitation,

- is an excellent candidate for treatment,

- prognosis for rehabilitation is excellent,

- low risk of recidivism

*Request for Variance*

Given all of the above, undersigned counsel request that the Court consider a sentence below the guideline sentence of 188-235 months of incarceration.[1]

Respectfully submitted,

/s/ William R. Barzee
William R. Barzee
Fla. bar No. 0158720
Courthouse Center, PH 1
40 N.W. Third Street
Miami, Florida 33128
Tel: (305)374 3998
Fax: (305)374 3985
WilliamBarzee@barzeeflores.com

---

[1] As the Court is no doubt aware, the enhancements in this case that drive such a high sentence occur in virtually every case of this nature. In the United States Sentencing Commission's report "The History of Child Pornography Guidelines" (2009), the commission points out that **97.2% of all cases receive a 2 level enhancement** for use of a computer pursuant to §2G2.2(b)(6) and **96.6% of all cases receive an enhancement for having an excessive number of images**. The truth of the matter is that the guidelines in these cases have not kept pace with the technology.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was e filed this

25th day of April 2016, and served on all appropriate parties through that system.

/s/William R. Barzee
William R. Barzee